In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-14-00168-CV

**RAMIN' CORPORATION, Appellant**

**V.**

**RUTH WILLS AND WILMA GLASS, L.L.C.**
**D/B/A SCIENTIFIC GLASS PRODUCTS, Appellees**

---

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-06-06626 CV**

---

**MEMORANDUM OPINION**

This appeal arises out of an employment dispute between employer Ramin'
Corporation (Ramin) and its former employee Ruth Wills (Wills). After a bench
trial, the court rendered a judgment that contained certain findings, including a
finding that Wills violated the duty of loyalty owed by an employee to the
employer and competed with Ramin during the period of her active employment
by Ramin; however, the trial court awarded Ramin no damages on the breach of

fiduciary duty claim, finding insufficient evidence of damages and the court entered a take nothing judgment as to all of Ramin's remaining claims against Wills. The court also included a finding that Wills was not an exempt employee under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, that Wills was not paid for her overtime work, that Ramin converted Wills' personal property, and that Wills should recover damages from Ramin. The trial court then rendered judgment in favor of Wills on her counterclaims against Ramin for failure to pay overtime under the FLSA and for conversion of property, and awarded Wills overtime compensation and liquidated damages under the FLSA, and damages for conversion of her property. Appellant, Ramin, asserts nine issues on appeal. Appellee, Wills, cross-appeals on a single issue. We affirm in part and reverse and remand in part.

FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial established that Ramin is a business located in Magnolia, Texas, which manufactures scientific glass. Wills began her employment with Ramin in 2008, where Wills worked until her resignation on or about June 14, 2011. Ramin filed an Original Petition on or about June 16, 2011, naming Wills, Wilma Glass L.L.C. (Wilma Glass), and Miquel [sic] Martinez as defendants, seeking a temporary restraining order, temporary injunction, and

2

permanent injunction, and asserting claims against the defendants for breach of their covenants not to compete and memorandum of employment agreement, for breach of fiduciary duty and conspiracy, tortious interference with prospective relationships, unfair competition, business disparagement, and an accounting. The trial court granted a Temporary Restraining Order on June 16, 2011. The trial court then held a temporary injunction hearing and denied the temporary injunction on October 12, 2011. On October 26, 2012, Wills filed her Second Amended Answer and First Amended Counter-Claim,[1] wherein she asserted various defenses and a counterclaim for Ramin's failure to pay overtime under the FLSA, conversion and theft, and retaliation, and she sought damages and attorney's fees. Ramin filed a First Amended Petition on November 18, 2013, no longer naming Martinez as a defendant but continuing to seek a recovery for the previously enumerated claims. Ramin later filed a Second Amended Petition. The Second Amended Petition was the live pleading on file at the time of trial. In the Second Amended Petition Ramin alleged a claim against Wills and Wilma Glass for breach of covenants not to compete and a memorandum of employment agreement, for breach of fiduciary duty and conspiracy, tortious interference with "prospective relations," unfair competition, business disparagement, and an accounting. In Ramin's Second

---

[1] The record on appeal does not include a copy of Wills' original answer, first amended answer, or the original counterclaim, if any.

3

Amended Petition, Ramin also included an affirmative defense that Wills was exempt from overtime compensation under the FLSA because "she was a management employee and also an employee in an executive, administrative, or professional capacity . . . ."[2] The parties tried all issues to the court in a bench trial.

Testimony of Ruth Wills

At trial and on appeal, the parties disagree on the nature and scope of Wills' primary job duties at Ramin. Wills testified that her job duties included inside sales, that she was "not in a management position[,]" and that she "never had any authority to be management." She testified that her primary duty at Ramin was "[c]ustomer service" and that her specific duties included answering the phones, taking orders, putting orders into the computer system, and shipping and ordering. Wills stated that she did not manage or supervise any employees, she could not fire employees, and she did not evaluate employees.

Wills testified that when she started working for Ramin her hourly rate was about $13 an hour. She then received a raise in 2009 that increased her pay to $15 an hour, and later her pay increased to $20 an hour. According to Wills, she worked for Ramin over forty hours a week because "[t]here was a lot to do[,]" and

---

[2] The only other affirmative defense to Wills' counterclaim that Ramin asserted in Ramin's Second Amended Petition was the defense of "[r]es judicata and collateral estoppel." Ramin did not include any argument or briefing on res judicata or collateral estoppel in its appeal.

she was not paid overtime compensation. Wills introduced into evidence a copy of her calendar with handwritten notes and a summary of her hours that she testified depicted the hours she worked.[3] Wills explained that when she first started working at Ramin "on some occasions he -- they did give me some overtime pay. But Brad said, No more overtime." Wills testified that she worked an average of "47 hours a week[,] 45, 46[]" and that she worked five days a week, sometimes weekends, and sometimes from home at night.

Wills testified that three glassblowers for Ramin, including Miguel Martinez (Martinez), also worked as glassblowers for other businesses in addition to working for Ramin, including work for Scientific Glass Products, a business that Martinez operated. Wills testified that, in October or November of 2010, Martinez invited her to join a side business he operated with family members. She testified that she agreed to join them, and together they formed Wilma Glass in December 2010. Wills testified that Wilma Glass had revenues of about $30,000 and that it had no profits during that time. Wills' claim for unpaid overtime pertained to the years 2009 through 2011. According to Wills, Wilma Glass ceased operating in June 2011.

---

[3] Ramin made an objection at trial to the calendar and summary worksheet which we will discuss in more detail in a subsequent section of our Memorandum Opinion.

Wills explained that Wilma Glass was doing business as Scientific Glass Products. Wills further explained to the court that on the weekend before she stopped working at Ramin, she and Martinez moved some items to the Wilma Glass shop located on Frazier Street. Wills later returned to find the locks changed, and she looked through the window and could see that certain items were missing. Wills made a list of the items that were taken and marked the items that personally belonged to her and the items that belonged to Wilma Glass, and that exhibit was introduced and admitted into evidence. Wills testified that "[a]ccording to Stacy [Collins,]" the president of Ramin and formerly the vice president of operations for Ramin, the items had been removed by Stacy Collins, Jim Ramin', Sue Ramin', Martinez, another glassblower for Ramin, and counsel for Ramin.

Testimony of Sue Ramin'

Sue Ramin', the controlling owner of Ramin, testified that when Wills began working at Ramin, her job duties included "[s]ales and phone and kind of getting acquainted with the office procedures." Sue Ramin' testified that about one year later, Wills was promoted to office manager, and as office manager Wills had the responsibility for shipping, inside sales, and information technology.

Testimony of Stacy Collins

Stacy Collins (Collins) testified that when he started working for Ramin in 2011, Wills' job duties included scheduling, purchasing, and shipping, that Wills was the "sales manager over the office administration IT[]," that two employees reported to Wills, and that she had the capability to hire and fire employees. On cross-examination, Collins admitted that he testified at the temporary injunction hearing in this case that, during the time he worked at Ramin, Wills did not provide performance reviews to any employee, she did not supervise any employee, and she did not hire or fire anyone. Collins testified that Wills asked him for overtime pay in April or May of 2011, but he denied her request because "[s]he was exempt. . . . She made a salary. She had people reporting to her." Ramin did not present any documentary evidence at trial to establish the number of hours Wills worked each week, nor did Ramin specifically contest Wills' testimony that sometimes she worked from home, at night, or on weekends.

Testimony of Miguel Martinez

Martinez testified at trial that Wills was to "find customers" for Wilma Glass and also run the administrative side of the business, and "she knew people through Ramin'" that could be customers for Wilma Glass. Martinez stated that Wilma Glass had a shop on Goodson Road from about February to June of 2011, that they

7

moved the shop to a location on Frazier Street in June of 2011, but they only operated out of the location on Frazier for "a couple of days." Martinez testified that he told Jim Ramin', co-owner of Ramin, about the Wilma Glass shop on Frazier Street and that Martinez himself allowed some people with Ramin to go to the Wilma Glass shop. Martinez testified that he opened the door to the Wilma Glass shop and people from Ramin walked into the shop, and that Martinez then observed Ramin's people take things out of the Wilma Glass shop, which included some "boxes labeled with Jim Ramin' labels[.]" According to Martinez, he also saw them put the items from the shop on a truck and drive away with the items, and later he saw some of the items from the Wilma Glass shop in Jim Ramin's garage.

At trial, Ramin and Wills each agreed to submit their claims for attorney's fees by affidavit to the court. After the bench trial, Wills' attorney filed an affidavit in support of attorney's fees with attached billing statements. The record includes no response or objection by Ramin to Wills' attorney's affidavit or billing statements, nor does the record include any evidence that Ramin filed any motion or affidavit to controvert the fees or to support a request for Ramin's attorney's fees.

The trial court entered a Final Judgment on March 10, 2014. In the Final Judgment, the court included the following language:

> The Court finds that Ruth Wills, an employee of Ramin', violated the duty of loyalty owed by an employee to the employer and competed with Ramin' during the period of her active employment by Ramin'; that there is insufficient evidence to establish damages suffered by Ramin' as a result of Wills' actions; and the Court finds Ramin' should take nothing on Ramin's claim for breach of fiduciary duty.
>
> The Court also finds that all remaining causes of action asserted by Ramin' were not supported by the [sic] sufficient evidence and Ramin' should take nothing on all of its remaining claims against both Wills and Wilma Glass, LLC.
>
> The Court finds that Wills was not an exempt employee under the Fair Labor Standards Act; Wills was not paid for her overtime work in the amount of $30,450.00; Wills is entitled to recover liquidated damages from Ramin' in the amount of $30,450.00; Ramin' converted Wills' personal property that had a value of $7,429.00; and finds that Wills should recover damages from Ramin' for these amounts.
>
> The Court finds that there is insufficient evidence to establish the reasonable and necessary attorney fees for the claim of overtime work and that Wills should take nothing on her claim for attorney fees.

The court ordered that Ramin should "take nothing" on its claims against Wills and Wilma Glass. The court awarded Wills the sum of $30,450 for unpaid overtime and an equal amount of $30,450 in liquidated damages, and the sum of $7,429 in damages for the conversion of Wills' property, and taxed all costs against Ramin.

Ramin filed a "Motion to Modify and Reform Judgment, Or, In the Alternative, Motion for New Trial[,]" arguing that the court should modify the

9

Final Judgment so that "Wills receives no reward for her breach of fiduciary duty[]" and arguing that "[t]here was no evidence to support the conversion claim." The trial court did not modify the Final Judgment. Neither party requested the trial court issue separate findings of fact and conclusions of law, and none were signed by the trial court. Ramin timely filed a Notice of Appeal. Wills cross-appealed solely on the denial of attorney's fees pertaining to her counterclaim for unpaid overtime compensation.

ISSUES ON APPEAL

In its first issue, Ramin argues that the trial court erred in concluding that Wills was not an exempt employee under the FLSA. In its second and third issues, Ramin argues that because the court found that Wills breached her fiduciary duty to Ramin, Wills should not have been permitted to "enjoy the profits of her breach," and that it was error to award Wills any damages for unpaid overtime compensation. In its fourth and fifth issues, Ramin argues that the trial court erred in awarding Wills any damages for conversion because there was no evidence that Ramin took or exercised dominion and control over Wills' personal property, and there was no evidence of the market value of the property at issue to support an award of damages.

Ramin's remaining issues pertain to the admission of evidence and the leading nature of certain questions. Ramin contends that the court erred in admitting Will's personal calendar, diary, and summaries thereof (issue six), in admitting certain of Wills' emails (issue seven); in admitting Wills' list of market values of the property she alleged Ramin converted (issue eight), and in permitting Wills' attorney to utilize leading questions (issue nine).

Wills cross-appealed and stated only one issue, wherein she argues that the trial court erred in failing to award her attorney's fees on the successful prosecution of her counterclaim under the FLSA. Wills argues that an award of attorney's fees is "mandatory" under the FLSA.

### STANDARD OF REVIEW

When a bench trial is conducted and the court does not sign separate findings of fact and conclusions of law to support its judgment, all facts necessary to support the judgment are implied. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged on the basis of

11

legal and factual sufficiency. *BMC Software Belg., N.V.*, 83 S.W.3d at 795. We review the trial court's decision for legal sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827.

We review a trial court's conclusions of law as a legal question. *BMC Software Belg., N.V.*, 83 S.W.3d at 794. The appellant may not challenge the trial court's legal conclusions based upon factual insufficiency, but the appellate court can examine the trial court's legal conclusion drawn from the facts in the record to determine whether the trial court made the correct legal conclusion. *Id*. When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

In this case, the trial court did not issue separate findings of fact and conclusions of law but it did include certain findings in the Final Judgment. Under

12

Texas Rule of Civil Procedure 299a, a trial court should not include its findings of fact in its judgment. *See* Tex. R. Civ. P. 299a ("Findings of fact shall not be recited in a judgment."). There are no additional findings in the record other than those contained in the Final Judgment. Therefore, there is nothing with which the trial court's findings could conflict, and neither party contends on appeal that the trial court erred in including findings in the Final Judgment, nor do they argue that the Final Judgment is in conflict with other findings of the trial court. Accordingly, for purposes of appeal we will accord such findings as set forth in the Final Judgment probative value. *See James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 364 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Summers v. Dep't of Crim. Justice*, 256 S.W.3d 752, 754 n.1 (Tex. App.—Beaumont 2008, no pet.) (for purposes of appeal, accepting the trial court's unchallenged finding of fact contained in the judgment); *In re Estate of Jones*, 197 S.W.3d 894, 900 n.4 (Tex. App.—Beaumont 2006, pet. denied) (". . . if findings are recited in the judgment, and no one complains or requests findings, and there is no conflict with separately filed findings of fact, the findings of fact in the judgment should not be ignored on appeal. . . . Even if we reviewed the case as though no express findings were made, we would presume all necessary findings to support the order.") (citations omitted).

In its first issue on appeal, Ramin argues that "the trial court's conclusion that Wills was not an exempt employee under the FLSA was error [as] a matter of law[.]" Ramin contends that Wills was an exempt employee under the "bona fide executive" exemption. According to Ramin, Wills was a sales manager and a "key management employee" and therefore she was an "exempt employee" under the FLSA. Ramin contends that Wills (1) was paid at least $455 a week, (2) had the "primary duty" of management, (3) regularly directed the work of two or more employees, and (4) had "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." Therefore, Ramin argues that Wills was not, as a matter of law, entitled to overtime compensation under 29 U.S.C. § 207, and the trial court erred in awarding Wills overtime compensation as well as liquidated damages under the FLSA.

Generally, the FLSA requires an employer to pay nonexempt employees who work more than forty hours in a seven-day work week at a rate of not less than one and one-half times the employee's regular rate of pay for the overtime hours worked by the employee. *See* 29 U.S.C. § 207(a)(1); *Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 749 (5th Cir. 2003); *Vela v. City of Houston*, 276 F.3d 659, 666

14

(5th Cir. 2001); *Allen v. Coil Tubing Servs., LLC*, Civ. A. No. H-08-3370, 2011 U.S. Dist. LEXIS 119466, at *20 (S.D. Tex. Oct. 17, 2011). Under 29 U.S.C. § 216(b), an employer who violates provisions 206 or 207 of the FLSA shall be liable for "unpaid overtime compensation . . . and [] an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA gives state courts jurisdiction to hear cases involving suits for overtime pay. *Id.*

We apply federal substantive law and Texas state procedural law when reviewing a claim brought under a federal statute. *See In re Global Sante Fe Corp.*, 275 S.W.3d 477, 485 (Tex. 2008) (In a suit with claims pertaining to the Jones Act, the Court stated when a state court hears the claim which is brought under a federal statute, generally the state court follows federal substantive law and applies state procedural law.). Determining whether or not Wills is entitled to overtime compensation under the FLSA is a question governed by federal law.

The FLSA expressly provides that some employees may be exempt from overtime. One of the exemptions outlined in Section 213(a)(1) is for an "employee employed in a bona fide executive . . . capacity."

> § 213. Exemptions
> (a) Minimum wage and maximum hour requirements. The provisions of sections 6 (except subsection 6(d) in the case of paragraph (1) of this subsection) and 7 [29 USCS §§ 206, 207] shall not apply with respect to--

> (1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary . . .)[.]

29 U.S.C. 213(a)(1).

An employee may qualify for such exemption if the employee is: (1) compensated on a salary basis at a rate of not less than $455 per week; (2) has the primary duty of management of the enterprise or a recognized department of the enterprise in which the employee is employed; (3) customarily and regularly directs the work of two or more employees; and, (4) has the authority to hire and fire employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a). Exemptions under the FLSA are narrowly construed against the employer, and the employer has the burden of proving that an employee is exempt. *See Tyler v. Union Oil Co.*, 304 F.3d 379, 402 (5th Cir. 2002) (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)).

An employee may hold multiple job responsibilities, and some may qualify as executive level tasks and others may not qualify as executive level tasks. 29

16

C.F.R. § 541.106(a). The regulatory provisions focus upon the "primary duty" of the employee. "Primary duty" is defined as follows:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the "principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) . . . The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(a), (b).

Here, while Wills was paid more than $455 per week, she testified that she: (1) did not have the *primary duty* of management; (2) did not customarily and regularly direct the work of two or more employees, and (3) did not have the authority to fire or evaluate employees or provide employment-related suggestions

17

that were given any particular weight. Wills also testified that her *primary duty* at Ramin was customer service, and that she entered sales orders, invoiced sales orders, completed filing, sent purchase orders to vendors, and answered phones. Wills stated that she did not supervise glassblowers, did not manage sales, and did not actively recruit new customers for Ramin. According to Wills, "everybody was [her] boss," and she simply followed orders. On the other hand, according to Ramin, Wills worked as the sales manager for Ramin until she resigned on June 13, 2011. Ramin argued that Wills sent emails that referenced her position as a "sales manager." According to Ramin, as sales manager, Wills managed the daily operations of Ramin, she supervised a number of employees including the company's vice president of finance, she would oversee some of the manufacturing, and Wills' suggestions and recommendations on employment decisions in the company were given particular weight.

As the factfinder in this case, the trial court was the sole judge of the credibility of the witnesses, and the trial court was entitled to resolve inconsistencies in the testimony by believing one witness and disbelieving others regarding the duties Wills performed. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). The trial court could have believed Wills and disbelieved the Ramin witnesses. The title that Wills may have had under her name on emails

18

wherein she referred to herself as a "sales manager," while probative, would not necessarily be dispositive because "[a] job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. The trial court found that Wills was not an exempt employee under the FLSA. We conclude that the evidence is sufficient to support the conclusion reached by the trial court that Wills was not an exempt employee. *See Tyler*, 304 F.3d at 402-04.

An employer who violates the FLSA is liable for liquidated damages equal to the amount of unpaid overtime compensation unless the employer acted in "good faith" and had "reasonable grounds" to believe that its non-payment of overtime complied with the law. *See* 29 U.S.C. § 260. The employer bears a "substantial burden" of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA. *See Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998). Good faith includes a duty to investigate potential liability under the FLSA. *See York v. City of Wichita Falls, Tex.*, 763 F. Supp. 876, 881 (N.D. Tex. 1990). An employer may demonstrate its "good faith" if it acted with a mistaken, but reasonable, belief that its acts were in conformity with the law. *Id.* (citing *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. 1981)).

Ramin includes a statement in its appellate brief that the trial court erred in awarding Wills liquidated damages. Ramin includes this statement within Ramin's

19

argument on appellate issue one regarding Wills' "exempt status." Ramin does not make a separate challenge to the amount the trial court awarded in liquidated damages. Ramin also does not argue that it acted in "good faith," and Ramin does not contend that it had "reasonable grounds" to believe that its actions were in compliance with the overtime provisions of the FLSA. There is no indication in the record before us that Ramin offered evidence that it took steps to reasonably investigate its liability for the payment of overtime under the FLSA. Accordingly, we conclude that the trial court did not err in awarding Wills liquidated damages. We overrule Ramin's first issue.

FORFEITURE OR DISGORGEMENT OF PROFITS

Ramin briefed its second and third issues together, and we will address both issues together. Ramin argues that the trial court should not have awarded damages to Wills under the FLSA because such an award permitted her "to enjoy the profits of her breach of fiduciary duty to Ramin[.]"[4] Citing to *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999), Ramin contends that when a fiduciary breaches her trust, "she must forfeit her ill-gotten gains[]," without regard to whether the breach resulted in

_____

[4] The trial court found that Wills "violated the duty of loyalty owed by an employee to the employer[.]" But, due to insufficient evidence of damages, the trial court found that "Ramin' should take nothing on Ramin's claim for breach of fiduciary duty." Wills does not challenge the trial court's finding that Wills breached a duty of loyalty to Ramin.

20

damages, and that "the trial court went fully against the mandate of Texas law by permitting Wills to keep the wages she wrongfully received while directly competing with Ramin as well as awarding her overtime wages[.]" In response, Wills argues that "profit disgorgement and wage forfeiture are equitable remedies[]" left to the discretion of the trial court and are not mandatory.[5]

Forfeiture is an equitable remedy. *Burrow*, 997 S.W.2d at 245. A party may seek forfeiture as a remedy for breach of a fiduciary duty, provided the party includes a request for forfeiture in its pleadings. *See Lee v. Lee*, 47 S.W.3d 767, 780-81 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Longaker v. Evans*, 32 S.W.3d 725, 733 n.2 (Tex. App.—San Antonio 2000, pet. withdrawn) (explaining that *Burrow v. Arce* did not apply where a party sought damages resulting from a fiduciary's misconduct and did not seek forfeiture). In its original and amended petitions, Ramin asserted that it was "entitled to disgorgement of any gross profits which Defendants received *as a result of* the breach [of fiduciary

---

[5] Neither party argues that disgorgement and forfeiture are distinct remedies. Therefore, solely for purposes of our review in this appeal we will treat them together. *See McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 904-05 (Tex. App.—Dallas 2014, pet. denied) (referring to "the equitable remedy of disgorgement or fee forfeiture"). The cases often use the terms interchangeably, but there may be a distinction between disgorgement of "ill-gotten profit" and forfeiture of agreed compensation. George Roach, *Texas Remedies in Equity for Breach of Fiduciary Duty: Disgorgement, Forfeiture, and Fracturing,* 45 St. Mary's L.J. 367, 372-73 (2014).

21

duty].” (emphasis added). Ramin did not include a request for forfeiture or that Wills “forfeit” her overtime compensation.[6]

We review a trial court's decision granting or denying equitable relief for an abuse of discretion. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428-29 (Tex. 2008). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Under the equitable remedy of disgorgement, a person who renders service to another in a relationship of trust may be denied compensation for her service if she breaches that trust. *See Burrow*, 997 S.W.2d at 237. The objective of the remedy is to return to the principal the value of what the principal paid because the principal did not receive the trust or loyalty from the other party. *Id.* at 237-38; *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 904 (Tex. App.—Dallas 2014, pet. denied). The party seeking forfeiture and equitable

---

[6] In its original and amended petitions, as part of Ramin's claim for breach of fiduciary duty and conspiracy, Ramin asserted that it was “entitled to disgorgement of any gross profits which Defendants received as a result of the breach[].” Ramin did not plead forfeiture or disgorgement as an affirmative defense to Wills' counterclaim under the FLSA, nor did Ramin seek an offset, or assert any other equitable defenses to the FLSA counterclaim.

22

disgorgement need not prove damages as a result of the breach of fiduciary duty.[7]

*Burrow*, 997 S.W.2d at 240; *Brock v. Brock*, No. 09-08-00474-CV, 2009 Tex. App. LEXIS 5444, at *5 (Tex. App.—Beaumont July 16, 2009, no pet.) (mem. op.).

Nevertheless, the remedy of forfeiture or equitable disgorgement for a fiduciary's breach is dependent upon the facts and circumstances in each case. *See Burrow*, 997 S.W.2d at 241-42 ("Forfeiture of fees, however, is not justified in each instance in which a [fiduciary] violates a legal duty, nor is total forfeiture always appropriate."). It is within the discretion of the court whether the agent who has committed a breach of trust shall receive full compensation or whether her compensation shall be reduced or denied. *Id.* at 243. When exercising such discretion, the court may consider several factors, including (1) whether the agent acted in good faith; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole or related only to a part of the principal's interest; (4) whether the breach of trust by the agent occasioned any loss to the principal and whether such loss has been satisfied by the agent, (5) whether the services of the agent were of value to the principal. *Id.* A court may also consider evidence of the fiduciary's salary,

---

[7] In the Final Judgment, the trial court found that Wills violated the duty of loyalty, but it concluded that the evidence was insufficient to establish any resulting damages to Ramin. On appeal, Ramin does not challenge the trial court's finding on this issue.

profits, or other income during the time the breach occurred. *See McCullough*, 435 S.W.3d at 905.

Ramin relies heavily on *Burrow*, but we conclude that *Burrow* is factually distinguishable from this case. *Burrow* dealt with an attorney's breach of fiduciary duty to his client and a request that the attorney forfeit his attorney's fees, whereas the present case pertains to an employee's breach of fiduciary duty to her employer.[8] The attorney-client relationship is one of "'most abundant good faith,' requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception." *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.— Houston [14th Dist.] 2001, pet. denied). In contrast, under Texas law, an employee does not owe an absolute duty of loyalty to her employer. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201 (Tex. 2002). When a fiduciary relationship

_____

[8] In *Burrow*, the Court considered *Kinzbach Tool Company v. Corbett-Wallace Corporation*, 160 S.W.2d 509 (Tex. 1942), which concerned an employee's alleged breach of fiduciary duty. *See Burrow v. Arce*, 997 S.W.2d 229, 238-39 (Tex. 1999) (noting that in *Kinzbach*, "this Court held that an agent was required to forfeit a secret commission received from a conflicting interest even though the principal was unharmed."). In *Kinzbach*, the employer only sought forfeiture of a "secret commission" the employee had received from a third party in competition with the employer; the employer did not attempt to recoup any monies that it owed the employee. *See* 160 S.W.2d at 573-74; *see also* Charles Silver, *A Critique of Burrow v. Arce*, 26 Wm. & Mary Envtl. L. & Pol'y Rev. 323, 333 (2001) ("*Kinzbach Tool* actually stands for the unremarkable proposition that an agent who receives a hidden benefit when effecting a transaction must convey the benefit to the principal.").

exists between an employee and employer, the employee has a duty to act primarily for the benefit of the employer in matters connected with her agency. *See id.* at 200. Absent an agreement to the contrary,[9] an at-will employee may plan to compete with her employer, may take active steps to do so while still employed, may secretly join with other employees in a plan to compete with the employer, and has no general duty to disclose such plans. *Id.*; *see also Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, the at-will employee may not "act for his future interests at the expense of his employer or engage in a course of conduct designed to hurt his employer." *McCullough*, 435 S.W.3d at 904.

The equitable remedy of forfeiture is based upon the fact that the trustee has not rendered or has not properly rendered the services for which compensation is given. *Burrow*, 997 S.W.2d at 238 ("When the compensation of the trustee is reduced or denied, . . . the reduction . . . is based upon the fact that the trustee has not rendered or has not properly rendered the services *for which compensation is given*.") (emphasis added). Similarly, disgorgement of profits requires the fiduciary

---

[9] In its Second Amended Petition, Ramin alleged that Wills had signed a Memorandum of Employment Agreement that included a Covenant Not to Compete. However, Wills disputed that she ever signed such an agreement and Ramin was unable to produce a signed agreement at trial or at the temporary injunction hearing that preceded the trial on the merits.

25

to yield to the beneficiary the profit or benefit gained during the time of the breach. *AZZ Inc. v. Morgan*, No. 02-14-00097-CV, 2015 Tex. App. LEXIS 3471, at \*\*31-32 (Tex. App.—Fort Worth Apr. 9, 2015, no pet.) (To obtain disgorgement, "proof of the fiduciary's salary, profits, or other income *during the time of his breach* of fiduciary duty is required[.]") (emphasis added); *Swinnea v. ERI Consulting Eng'rs, Inc.*, 236 S.W.3d 825, 841 (Tex. App.—Tyler 2007) *rev'd on other grounds*, 318 S.W.3d 867 (Tex. 2010) ("[A] fiduciary must account for, and yield to the beneficiary, any profit he makes *as a result of* his breach of fiduciary duty[.]") (emphasis added); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 187 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (same) (citing to *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576-77 (Tex. 1963)).

Wills testified that, in October or November of 2010, Martinez invited her to join a side business he operated with family members. She testified that she agreed to join them, and together they formed Wilma Glass in December 2010. Wilma Glass ceased operating in June 2011. According to Wills, Wilma Glass had revenues of about $30,000 and it had no profits. Wills' claim for unpaid overtime pertained to the years 2009, 2010, and 2011.[10]

---

[10] The statute of limitations under the FLSA for unpaid minimum wage, unpaid overtime compensation, or "liquidated damages" is two years, unless the violation was willful, and then the limitation period is three years. 29 U.S.C.

There is an absence of evidence in the record to establish that Wills'
overtime at Ramin was linked to or resulted from the work she was performing for
Wilma Glass or that she profited from the Wilma Glass venture. Wills' claim for
unpaid overtime spanned a period of about two and a half years, while her
involvement with Wilma Glass spanned only about nine months during 2011.
Applying the *Burrow* factors to determine whether the remedy of forfeiture or
disgorgement fits the circumstances, we conclude that there is an absence of
evidence to establish that Wills' breach of her fiduciary duty was directly
connected to her recovery of overtime, or that Ramin incurred any loss resulting
from Wills' breach, and there is no evidence that Wills' services she performed for
Ramin during the overtime hours were of no value to Ramin. *See Burrows*, 997
S.W.2d at 241. Consequently, we cannot say the trial court abused its discretion by
failing to require Wills to forfeit her damages for overtime that Ramin failed to

---

§ 255(a); *Kamat v. Prakash*, 420 S.W.3d 890, 897 (Tex. App.—Houston [14th
Dist.] 2014, no pet.) (failure to pay minimum wage under the FLSA has a two-year
statute of limitations unless the violation was willful). Ramin raised no statute of
limitations defense at trial. Accordingly, the trial court could consider the full
period of time in the record for which Wills sought unpaid overtime.

pay. *See AZZ, Inc.*, 2015 Tex. App. LEXIS 3471, at **31-32.[11] We overrule

Ramin's second and third issues.

[11] Additionally, we note that federal courts have been reluctant to allow an employer to obtain a set-off in an FLSA overtime claim. The Fifth Circuit, for example, has reaffirmed its position generally disallowing an employer to obtain a set-off or credit in an action to enforce the FLSA's minimum wage and overtime provisions. *See Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740-41 (5th Cir. 2010) ("Generally speaking, courts have been hesitant to permit an employer to file counterclaims[] in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused.") In *Martin*, Pepsi raised the set-off issue as an affirmative defense to the overtime compensation claims, rather than as a counterclaim. Pepsi argued that set-offs are appropriate in FLSA cases as long as they do not cause an employee's wages to fall below the statutory minimum, and Pepsi relied upon the case of *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003), and several earlier district court opinions. The Fifth Circuit rejected Pepsi's argument, relying upon its opinion in *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010), wherein the Court further clarified that the "longstanding prohibition of set-offs in FLSA cases is the rule in this circuit and *Singer* an exception." *Martin*, 628 F.3d at 742. The Fifth Circuit stated "[w]e continue to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *Id.*

But note that other courts have allowed an employer's counterclaims as a set-off to an employee's claim under the FLSA. *See, e.g.*, *Dejesus v. Emerald Coast Connections of St. Petersburg, Inc.*, No. 8:10-cv-462-T-30TBM, 2010 U.S. Dist. LEXIS 68845, at **3-4 (M.D. Fla. June 17, 2010) (in an employee's suit under the FLSA, concluding employer's counterclaims for state law conversion and civil theft were permissive, over which the court did not have independent jurisdiction, but allowing the claims to operate as "defenses and/or setoffs"); *Markbreiter v. Feinberg*, No. 09 Civ. 5573 (LAK), 2010 U.S. Dist. LEXIS 7549, *4 (S.D.N.Y. Jan. 29, 2010) (allowing employer's counterclaims and defenses under New York's "faithless servant" doctrine to operate as a set-off to employee's claim under the FLSA, but such claims were not an independent bar to plaintiff's recovery); *see also Wagoner v. N.Y.N.Y., Inc.*, No: 1:14-cv-480, 2015 U.S. Dist. LEXIS 40679, at **15-20 (S.D. Ohio Mar. 30, 2015) (noting that the FLSA

CONVERSION

In its fourth and fifth issues, Ramin argues that the court erred in awarding damages for conversion to Wills because there was no evidence that Ramin took or exercised dominion and control over Wills' personal property, and there was no evidence of the market value of the property at issue. And in its eighth issue, Ramin argues that the court erred in admitting Wills' list of the values of the personal property she claimed Ramin converted.

<u>Dominion and Control</u>

Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *See Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). A claim for conversion requires proof that (1) the claimant owned or had possession of property, (2) the defendant unlawfully and without authorization assumed and exercised control and dominion over the property to the exclusion of the claimant, (3) the claimant demanded return of the property, and (4) the defendant refused to return the property. *See Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App.—Dallas 2008, no pet.).

---

provides for certain offsets and credits without requiring an affirmative counterclaim, allowing employer's counterclaims in the interest of "judicial economy and fairness[,]" but dismissing counterclaims for failure to state a claim upon which relief may be granted).

Ramin argues that there is no evidence "that Ramin exercised dominion or control over any of the personal property she claimed disappeared" and that "there was no evidence of the market value of the personal property items at the time of the alleged conversion." Because Ramin is attacking the legal sufficiency of the evidence supporting an adverse finding on an issue for which Ramin did not have the burden of proof, Ramin must show that no evidence supports the trial court's adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). Evidence is legally sufficient if it "'would enable reasonable and fair-minded people to reach the verdict under review[,]' . . . credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *Id.* (quoting *City of Keller*, 168 S.W.3d at 827). We defer to the trial court's determination of credibility because, as the factfinder in a bench trial, the trial court is the exclusive judge of the facts, the witnesses' credibility, and the weight given to testimony. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000); *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied) ("The trial judge as factfinder was the sole judge of the witnesses' credibility and the weight to be given their testimony.").

Wills testified that her personal property as well as property belonging to Wilma Glass was in boxes in the shop on Frazier Street, and photographs were admitted into evidence that depicted the items that were in the shop on Frazier. Wills also testified that the items went missing from the shop in June 2011. She explained that one day she arrived at the shop and she was locked out, but she could see through the window and side door that the shop was empty and "there was nothing left." Wills testified that it was her belief based on information from Stacy Collins that a group of Ramin employees, including Collins, Jim Ramin', Sue Ramin', Martinez, and another glassblower for Ramin, took items belonging to Wills and Wilma Glass. Wills also testified that she believed that at least some of the property removed from the shop on Frazier Street was in Jim Ramin's garage. Martinez testified that he told Jim Ramin' about the shop on Frazier, that Martinez unlocked the shop for people from Ramin, that people from Ramin took things out of the shop, that Martinez saw these same people put the items in a truck and drive away, and that he later saw the items in Jim Ramin's garage. Collins indicated that "the stuff that is sitting in Jim Ramin's garage" was removed from Wilma Glass but according to Collins the items consisted of products made by Ramin.

The trial court as the fact finder could have believed Wills' and Martinez's testimony and disregarded Collins' testimony. Considering the evidence and

31

testimony at trial in the light most favorable to the finding under review, we conclude there is sufficient evidence that Ramin exercised dominion and control over property that belonged to Wills.

Evidence of Damages

In its fifth issue, Ramin argues that the trial court erred in awarding conversion damages to Wills because there was no evidence of the market value of the property at the time of the alleged conversion. In its eighth issue, Ramin argues that the court erred in admitting Wills' list of values of the property she claimed Ramin converted because Wills failed to establish a predicate for such values.

We review the admission of evidence for an abuse of discretion. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer*, 701 S.W.2d at 241-42. Even if the trial court abused its discretion in admitting certain evidence, reversal is only appropriate if the error was harmful and probably resulted in an improper judgment. *See U-Haul*, 380 S.W.3d at 132; Tex. R. App. P. 44.1, 61.1.

Generally, the measure of damages in a conversion case is the fair market value of the property converted at the time of the conversion and legal interest

32

thereon. *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997). "Fair market value has been defined as 'the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it.'" *Burns v. Rochon*, 190 S.W.3d 263, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *City of Austin v. Cannizzo*, 267 S.W.2d 808, 815 (Tex. 1954)). A property owner may testify about the market value of his property if his testimony shows that he is familiar with the market value and his opinion is based on that market value, and not entirely speculative. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157-59 (Tex. 2012); *Redman Homes v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996) ("A property owner is qualified to testify to the market value of his property."); *Khorshid, Inc.*, 257 S.W.3d at 760.

Wills offered into evidence at trial a list of the items that she claimed Ramin took, along with a value assigned to each item. Ramin objected based on hearsay and relevance, stating "I don't even know what that monetary amount is, if it's fair market value, if it's purchase price, whatever it is. But it's hearsay either way." The court overruled Ramin's objections and admitted the evidence. During the testimony, the following exchange occurred between Wills and her attorney:

[ATTORNEY]: As the owner of those items were you familiar with what the value, the fair market value of those items were at the time that you last saw them at the shop?

[WILLS]: Yes.

[ATTORNEY]: And are the numbers that are written down, corresponding to the items, the fair market value at the time that you last saw them at the shop?

[WILLS]: Yes.

[ATTORNEY]: The items that are marked for Wilma Glass, can you tell the Court why those items are on this list?

[WILLS]: They were bought and paid for by Wilma Glass. And they were at the shop when I last saw them.

[ATTORNEY]: When you went back were they at the shop?

[WILLS]: No.

[ATTORNEY]: As one of the members of Wilma Glass LLC, were you familiar with what the fair market value of these items were?

[WILLS]: Yes.

[ATTORNEY]: And do the numbers reflected on Defendants' Exhibit 130 highlighted for Wilma Glass, do those numbers reflect the fair market value of those items at the time that you last saw them?

[WILLS]: Yes.

Ramin then objected on the basis that there was a lack of a predicate. Counsel for Ramin took Wills on voir dire, asking what Wills did to ascertain the fair market value of an oven. Wills testified that she "looked at Craigslist" to determine its

34

value. When Ramin began to ask about the heaters on Wills' list, the trial court judge interjected, "[a]ll right[,] [l]et's not go through every item. . . . Just ask a global question for us." Citing to *Porras v. Craig*, 675 S.W.2d 503 (Tex. 1984), Ramin argued to the trial court that "the predicate is that there has to be an ascertainment of fair market value, not intrinsic value, not purchase price, and there has to be a market that the witness actually used." The trial court noted that "she's also an owner who can testify as to value[]" and the court instructed counsel for Ramin to ask Wills "a global question about all items on the list for purposes of voir diring the witness[.]" Ramin asked Wills "did you look on Craigslist for the value of every single item that is on Defendants' Exhibit 130?" Wills replied "I looked at the Internet on various sites. I looked at my receipts for my personal stuff, yes." Ramin objected to the response as "[n]on-responsive[,]" and the trial court sustained the objection and stated "I believe, though, that the witness has satisfied the requirements for the testimony as to how she's determined the value." Wills testified that she was the property owner and that she was familiar with the market value of the property at issue, and she included testimony about the amount she paid for the items and then described her search for similar items on the internet. Wills also testified that the total value of the items that belonged to her was approximately $7,500. Wills agreed that the value of items that belonged to

35

Wilma Glass that had not been returned to her was "about 38 or $39,000[.]" We find that the trial court did not abuse its discretion in overruling the objection of Ramin and in admitting the testimony from Wills about the value of her property. *See Nat. Gas Pipeline*, 397 S.W.3d at 155. With respect to the trial court's admission of the list, Wills testified that the total value of the items that belonged to her was "approximately $7,500[,]" and the list was merely cumulative of Wills' testimony, and any error was harmless. *See Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998). We conclude there was legally sufficient evidence to support the trial court's judgment awarding Wills $7,429 for the conversion of her personal property by Ramin. We overrule Ramin's fourth, fifth, and eighth issues.

EVIDENCE OF OVERTIME HOURS WORKED

In issues six and seven, Ramin argues the trial court erred in admitting Defendant's Exhibit 109, Wills' desk calendars or planners wherein she claimed she kept notes of her hours worked and a spreadsheet summary thereof, and Defendant's Exhibit 120, which included emails between Ruth Wills, Stacy Collins, and other Ramin representatives and employees. Ramin contends that Wills' desk calendars, the spreadsheet summary, and the emails are all hearsay

36

outside of any exception to the hearsay rule and that the trial court erred in admitting them into evidence.

The FLSA obligates employers to keep accurate records of the hours employees work. *See* 29 U.S.C. § 211(c). "[W]here an employer keeps incomplete or inaccurate records, 'an employee has carried out [her] burden if [s]he proves that [s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Williams v. IBEW, Local 520*, 298 F.3d 458, 463 (5th Cir. 2002) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)); *see also Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 420 (5th Cir. 1975). Once the employee has met this burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88; *Skipper*, 512 F.2d at 420. A claimant need not prove each hour of overtime with "'unerring accuracy or certainty.'" *See Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 546-47 (S.D. Tex. 2011) (quoting *Prince v. MND Hospitality, Inc.*, Civ. A. No. H-08-2617, 2009 U.S. Dist. LEXIS 61637, at *17 (S.D. Tex. July 20, 2009)). Evidence from the employee may include the employee's own testimony

as to when and how many overtime hours she worked. *See Garner*, 834 F. Supp. 2d at 547.

In support of her claim for overtime hours worked, Wills testified that she worked an average of about seven and a half hours of overtime each week in 2009 and in 2010 and that she worked an average of about five hours of overtime each week in 2011. She also testified that she requested to be paid for her overtime, and that she made the request for overtime by email to Collins. And Collins admitted in his testimony that Wills made a request to be paid overtime.

Wills offered her personal desk calendars from 2009 through 2011. Wills testified that she made notes about the hours she worked in the desk calendars. When Wills' attorney offered the desk calendars into evidence, counsel for Ramin objected, saying "Your Honor, I object. Hearsay. Filled with it." Wills' attorney responded that "we are offering it only for the notation regarding the hours that she worked." Upon examination by her attorney, Wills testified that she recorded the hours she worked on a daily basis, she made the notation in her calendars "[o]n the same date" as she worked the hours, and the information in her calendars regarding her hours worked was true and correct and within her personal knowledge. She testified that the spreadsheet she offered into evidence included the "start time, lunch out, lunch in, and total hours, hours worked, and overtime hours[]," and that

38

the spreadsheet was based upon a true and correct copy of her actual planners or calendars. After Wills' testimony regarding her personal calendars, her attorney offered the calendars and spreadsheet into evidence "for the limited purpose of showing the hours that she worked[.]" Ramin objected again as follows:

> Your Honor, first of all, . . . the so-called predicate that they have laid doesn't even meet any exception to hearsay.
> Second of all, the Excel spreadsheet, . . . obviously were [sic] created after the fact and they are not even part of the planner. And so it is hearsay and outside of any exception. And these documents obviously weren't even created at the same time as the planners were, these Excel spreadsheets.

The trial court overruled Ramin's objection and admitted the calendars and the spreadsheet summaries "as a shorthand rendition of the information contained therein." Ramin offered no testimonial or documentary evidence to contradict Wills' evidence of the number of hours Wills claimed she worked.

In its brief, Ramin argues that Wills' personal calendars or diaries were not admissible under any exception to the hearsay rule because there was "nothing systematic about Wills' calendar book, as it contained randomness of entries all in Wills' handwriting. No regularly conducted activity of a business or organization appears in that document and Wills' counsel never seemed even to make such argument at trial." Wills argues on appeal that the planners contained within Exhibit 109 were offered only as the basis for the tabulations and summaries of

hours worked[12] that she included within the spreadsheet in Exhibit 109, and that it was merely cumulative of Wills' other testimony. Wills does not argue that the planner or calendar met any exception to the hearsay rule.

Even if we assume without deciding that the trial court erred in admitting Exhibits 109 and 120, we conclude that the items were cumulative of Wills' other testimony at trial where she testified that she worked an average of about seven and a half hours of overtime each week in 2009 and in 2010, and that she worked an average of about five hours of overtime each week in 2011. An erroneous admission of evidence that is merely cumulative of properly admitted evidence is harmless. *See Owens-Corning Fiberglas*, 916 S.W.2d at 557. Additionally, we conclude, based upon the record before us, that the trial court's admission of the documents in question in this bench trial was harmless error. *See* Tex. R. App. P. 44.1(a). We overrule Ramin's sixth and seventh issues.

LEADING QUESTIONS

---

[12] Upon proper foundation, summaries of documents may be admitted into evidence. *See Cano v. Nino's Paint & Body Shop*, No. 14-08-00033-CV, 2009 Tex. App. LEXIS 2713, at **11-17 (Tex. App.—Houston [14th Dist.] Apr. 16, 2009, no pet.) (mem. op.) (citing *McAllen State Bank v. Linbeck Constr. Corp.*, 695 S.W.2d 10 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.), and *Curran v. Unis*, 711 S.W.2d 290 (Tex. App.—Dallas 1986, no writ)); *see also* Tex. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.").

40

In Ramin's ninth issue, Ramin argues that the trial court erred in permitting Wills' attorney to ask leading questions regarding the overtime hours she worked because "those questions went to the core of Wills' complaint and their leading nature was far beyond harmless[.]" Specifically, Ramin complains of the following testimony at trial:

> [WILLS' ATTORNEY]: Ms. Wills, certainly we can go back and calculate the number of overtime hours that you worked based on those planners. But is it your testimony for this Court that you worked, you averaged about 7 and a half hours of overtime each week in 2009 and in 2010?
>
> [RAMIN'S ATTORNEY]: I object. Leading.
>
> [THE COURT]: All right. I'm going to overrule the objection. You can answer the question.
>
> [WILLS]: Yes, ma'am.
>
> [WILLS' ATTORNEY]: And did you work an average of five hours per week of overtime in 2011?
>
> [RAMIN'S ATTORNEY]: I object. Leading.
>
> [THE COURT]: Overruled.
>
> [WILLS]: Yes, ma'am.

Texas Rule of Evidence 611(c) prohibits leading questions on direct examination "except as necessary to develop the witness's testimony." Tex. R. Evid. 611(c). The decision to permit a leading question is within the sound

discretion of the trial court. *See Owens-Corning*, 916 S.W.2d at 568; *see also Am. Sur. Co. v. McCarty*, 395 S.W.2d 665, 669 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.) (holding that in a bench trial, the trial court has discretion to allow leading questions). To establish that a trial court abused its discretion, an appellant must show that the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a).

Ramin argues that "[s]ince improper documents, based upon hearsay, formed the basis of the leading questions[] and the answers thereto, the trial court's admission of the answers to the leading questions was harmful error." We disagree. Ramin has not demonstrated that the trial court abused its discretion in permitting the alleged leading questions and answers thereto or that, in doing so, such questions and answers "probably caused the rendition of an improper judgment" or that harmful error resulted. Tex. R. App. P. 44.1(a); *Sahualla v. Guseman Constr., LLC*, No. 09-14-00342-CV, 2015 Tex. App. LEXIS 4645, at \*4 (Tex. App.—Beaumont May 7, 2015, no pet.) (mem. op.). We overrule Ramin's ninth issue.

CROSS-APPEAL RELATING TO ATTORNEY'S FEES

In a single issue on cross-appeal, Wills argues that the trial court erred by failing to award her reasonable and necessary attorney's fees because she was a prevailing party on her counterclaim under the FLSA, and she contends that an

award of attorney's fees to a prevailing party is mandatory under the FLSA. In Wills' answer and counterclaim, she sought attorney's fees for the prosecution of her overtime claims under 29 U.S.C. § 216.

The availability of attorney's fees under a particular statute is a question of law that we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (fee award is question of law); *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.) (noting that availability of attorney's fees under a statute is reviewed de novo). However, the amount of attorney's fees is reviewed under an abuse of discretion standard. *See Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998); *see also Black v. Settlepou*, *P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (reviewing an award of attorney's fees under the FLSA for abuse of discretion).

The employee who prevails on her FLSA claim for overtime compensation is entitled to an award of reasonable attorney's fees. Under 29 U.S.C. § 216(b), "[t]he court in such action shall, in addition to any judgment awarded to the [employee] plaintiff or [employees] plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Wills argues that an award of attorney's fees to the prevailing party on a claim under the FLSA is mandatory, and that the trial court "had no discretion to deny [attorney's] fees in their

43

entirety." Ramin argues that the evidence of attorney's fees was legally insufficient to support an award because Wills' attorney's affidavit does not establish that the amounts submitted are reasonable or necessary, Wills' attorney failed to segregate fees as between Wills and Martinez, whom she also represented in the lawsuit, and the invoices do not segregate the services provided as to the various claims and defenses at issue in the litigation. The parties do not dispute that Wills was a prevailing party as to her FLSA counterclaim. In the final judgment, the trial court found "there is insufficient evidence to establish the reasonable and necessary attorney fees for the claim of overtime work and . . . Wills should take nothing on her claim for attorney fees."

Under Texas law, a prevailing party who is entitled to attorney's fees on one but not all of her claims would be required to "segregate fees between claims for which [attorney's fees] are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). Failure to segregate, though, does not result in the denial of any fee award. *Id.* at 314; *see also Citibank (S.D.), N.A. v. Tran*, No. 05-11-01423-CV, 2013 Tex. App. LEXIS 7619, at **20-21 (Tex. App.—Dallas June 21, 2013, pet. denied) (mem. op.) (holding that testimony of aggregate fee was some evidence of segregated fees and, therefore, supported remand); *Glenn v. Pack*, No. 02-09-00204-CV, 2011 Tex.

44

App. LEXIS 390, at \*21 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.) ("[Party's] failure to segregate fees does not mean that he cannot recover any fees . . . ."). Rather, testimony of the full, unsegregated amount of the fee is treated as "some evidence" of the segregated fee amount, and remand is appropriate to determine the segregated fee amount due. *Glenn*, 2011 Tex. App. LEXIS 390, at \*\*20-21; *Wright v. McCusker*, No. 04-99-00592-CV, 2000 Tex. App. LEXIS 4272, at \*3 (Tex. App.—San Antonio June 28, 2000, no pet.) (mem. op., not designated for publication). Under the FLSA, an employee who prevails on her claim for unpaid minimum wages or overtime compensation has a federal statutory right to reasonable attorney's fees. *See* 29 U.S.C. § 216(b); *Kamat v. Prakash*, 420 S.W.3d 890, 910 (Tex. App.—Houston [14th Dist.] 2014, no pet.), *Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("[A] prevailing plaintiff must be awarded reasonable attorney's fees and costs in actions brought under the FLSA.").[13]

---

[13] There may be facts which are not before us in this case where a court might conclude that even though the FLSA statute indicates the court *shall award* attorney's fees, the court does not award attorney's fees to a prevailing employee because of waiver. *See Kamat*, 420 S.W.3d at 910 (The household employee was awarded nothing for attorney's fees although she was a prevailing party on her FLSA minimum wage claim. On appeal, the court concluded that the employee waived her right to attorney's fees when she voluntarily stated on the record at trial that she would not seek attorney's fees.); *see also Green Tree Servicing, LLC v. Sanders*, No. 04-13-00156-CV, 2014 Tex. App. LEXIS 5643, at \*\*15-16 (Tex.

Texas courts have concluded in non-FLSA cases that if there is any evidence in support of the award of fees, the factfinder does not have discretion to award no fees. *See Chapa*, 212 S.W.3d at 311-14; *see also Tran*, 2013 Tex. App. LEXIS 7619, at *17 (holding that prevailing party could not be awarded zero attorney's fees by jury when attorney testified that he provided legal services and his testimony established that services had value); *Glenn*, 2011 Tex. App. LEXIS 390, at **19-22 (holding that jury could not award zero attorney's fees on breach-of-contract counterclaim when attorney testified to some fee amount).

With respect to section 216(b) and the language providing for attorney's fees, Texas courts apply federal law to determine the reasonableness of the fee. *AIM Group, Inc. v. Golden*, No. 01-05-00683-CV, 2007 Tex. App. LEXIS 1175, at **7-8 (Tex. App.—Houston [1st Dist.] Feb. 15, 2007, no pet.) (mem. op.) (in a claim under the FLSA, although state and federal law regarding reasonable attorney's fees are similar, federal law must be applied to determine whether the

App.—San Antonio May 28, 2014, no pet.) (mem. op.) (Court of appeals reversed an award of attorney's fees and rendered judgment that no attorney's fees be recovered. Attorney failed to plead for attorney's fees, and trial court erred in admitting testimony of attorney as to fees where attorney failed to disclose an expert on fees despite having been served requests for disclosure thereon.).

fee is reasonable); *Guity*, 54 S.W.3d at 528 (stating that federal law must be applied to a determination of attorney's fees in a claim under the FLSA).[14]

To calculate a reasonable attorney's fee in an FLSA case, a trial court multiplies the number of hours worked by the hourly rate. *See Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950, 961 (5th Cir. 1993) (reviewing a case under the Age Discrimination in Employment Act, which incorporates remedies authorized under the FLSA). The resulting amount is the "lodestar" figure. *See Guity*, 54 S.W.3d at 528. Both the number of hours and the hourly rate must be reasonable, and the court should consider only the hours spent on the successful claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 440 (1983). The fee applicant bears the burden of proof on reasonableness. *See Black*, 732 F.3d at 502. After calculating the lodestar figure, the trial court may adjust the amount upward or downward upon consideration of certain additional factors: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill required to perform the legal service properly; (4) preclusion of other employment

---

[14] We expressly do not decide whether the issue of attorney's fees under the FLSA must be determined by the trial court as compared to a jury. That issue is not currently before us. *See generally Bill Miller Bar-B-Q Enters. v. Gonzales*, No. 04-13-00704-CV, 2014 Tex. App. LEXIS 11796, at **5-14 (Tex. App.—San Antonio Oct. 29, 2014, no pet.) (mem. op.) (discussing the right to trial by jury under Article I, Section 15 and Article V, Section 10 of the Texas Constitution, which includes "the right to have a jury determine a reasonable amount of attorney's fees to be awarded.").

by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

A critical factor in determining an award of attorney's fees is the degree of success obtained. *See Black*, 732 F.3d at 503. Where a party has achieved only partial success, the product of hours reasonably expended on the litigation as a whole multiplied by a reasonable hourly rate may be an excessive amount. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 801 (5th Cir. 2006). A party is not entitled to attorney's fees for the prosecution of an unsuccessful claim unless it involves common facts or it derives from related legal theories of another claim that is successfully prosecuted. *See Williams v. Kaufman Cnty.*, No. 3:97-CV-0875-L, 2003 U.S. Dist. LEXIS 5974, at **8-9, 21 (N.D. Tex. Apr. 9, 2003) (citing *Hensley*, 461 U.S. at 434). The trial court should identify unsuccessful claims that are "wholly unrelated to successful claims" and exclude the hours associated with such unsuccessful claims. *See Chemical Mfrs. Ass'n v. U.S. Envtl.*

48

*Prot. Agency*, 885 F.2d 1276, 1282 (5th Cir. 1989); *accord Chapa*, 212 S.W.3d at 313 (under Texas law, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees.").

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. To establish that the amount of time expended on a matter is reasonable, the applicant can only meet his burden by presenting evidence that is adequate for a court to determine what hours should be included in the award. *See Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Applicants may need to produce billing records or other evidence adequate to show the hours worked and rates claimed. *See Hensley*, 461 U.S. at 433; *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

At trial, Ramin and Wills agreed to submit their claims for attorney's fees by affidavit to the court. Wills submitted an affidavit dated February 19, 2014, from her attorney outlining the hourly rate, total fees, and providing line-item bills with redacted descriptions of the legal services performed. In the attorney's affidavit, Wills' attorney stated that her fees were recoverable under several theories, except

49

for "about 3 hours of work solely for the defense of the breach of fiduciary duty claims." The attorney stated that all of the remainder of the time was "inextricably intertwined with claims for which attorneys' fees are recoverable." Wills' attorney provided no estimate in her affidavit regarding the number of hours or percentage of her time that was attributable solely to her FLSA counterclaim, nor did she specifically include a statement that certain discrete legal services advanced both recoverable and unrecoverable claims, but she did specifically allege that with the exception of "about 3 hours of work solely for the defense of the breach of fiduciary duty . . . the remainder of the time was inextricably intertwined with claims for which attorney's fees are recoverable."[15] The trial court included a finding in the Final Judgment that "there is insufficient evidence to establish the reasonable and necessary attorney fees for the claim of overtime work and that Wills should take nothing on her claim for attorney fees."

---

[15] The relevant portion of Wills' attorney's affidavit states that

[f]ees are recoverable for Ms. Wills' claim for violations of the Texas Theft Liability Act, for her overtime claim, and for the defense of an overly broad non-compete agreement with the exception of about 3 hours of work solely for the defense of the breach of fiduciary duty claims. The remainder of the time was inextricably intertwined with claims for which attorneys' fees are recoverable.

The claims related to the non-compete, over-time, and theft liability claims are so intertwined with the remainder of the claims and defenses that they cannot be segregated.

The general rule regarding the recovery of fees in Texas is that "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Chapa*, 212 S.W.3d at 311. In *Chapa*, the Court stated:

> Intertwined facts do not make tort [attorney's] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated. We modify *Sterling* to that extent.

*Id.*at 313-14. When multiple causes of action are asserted, some of which allow fee recovery and some of which do not, then evidence of time or money necessary only to the litigation of claims for which attorney's fees are not recoverable must be segregated from evidence of the reasonable amount of time or money necessary for the performance of legal services necessary to litigate claims for which attorneys' fees are recoverable. *Id.* If a particular legal service was necessary to litigate a cause of action for which attorney's fees are recoverable, such fees are not rendered unrecoverable merely because they also advance a claim for which attorney's fees would not be otherwise available. *See In re Lesikar*, 285 S.W.3d 577, 585 (Tex. App.—Houston [14th Dist.] May 7, 2009, orig. proceeding). In other words, if any of the component tasks relate solely to a cause of action for which legal fees are not recoverable, then those fees must be segregated and are not recoverable. *Id.* at 583 (quoting *7979 Airport Garage, L.L.C. v. Dollar Rent A*

*Car Sys.*, 245 S.W.3d 488, 509 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

A party seeking an award of attorney's fees bears the burden of proof on a claim that her attorney's legal services advanced both recoverable and non-recoverable claims and that no segregation is required. *See Jackson Walker, LLP v. Kinsel*, No. 07-13-00130-CV, 2015 Tex. App. LEXIS 3586, at \*\*55-59 (Tex. App.—Amarillo Apr. 10, 2015, no pet.) (mem. op.) (citing *Chapa*, 212 S.W.3d at 313-14 and *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)). A court must "examine the facts alleged in support of the claims to determine whether they are inextricably intertwined, and if the prosecution or defense does not entail proof or denial of essentially the same facts, the exception [to the requirement to segregate fees] does not apply." *Fix It Today, LLC v. Santander Consumer USA, Inc.*, No. 02-14-00191-CV, 2015 Tex. App. LEXIS 4677, at \*22 (Tex. App.—Fort Worth May 7, 2015, no pet.) (mem. op.) (citing *In re W.M.R.*, No. 02-11-00283-CV, 2012 Tex. App. LEXIS 9097, at \*46 (Tex. App.—Fort Worth Nov. 1, 2012, no pet.) (mem. op.)); *see also Jackson Walker, LLP*, 2015 Tex. App. LEXIS 3586, at \*55-59 (remanding the issue of segregation for a new trial where "the causes of action were distinct, and facts necessary to prove each did not overlap.").

Similarly, although the language in the FLSA states that a prevailing plaintiff (employee) must be awarded reasonable fees and costs in actions brought under the FLSA, the factfinder has discretion in setting the amount of the fees and reasonableness thereof and the prevailing party who is only partially successful may not be entitled to be reimbursed for all of their fees. *See Bode*, 919 F.2d at 1052 ("[B]ecause the [appellants] are only partly successful . . . , it is not proper to reimburse them for 100% of their . . . fees.").

At trial, Wills prevailed on her claim under the FLSA. Section 216(b) expressly provides that Wills, as a prevailing party, shall be entitled to seek a recovery of her reasonable attorney's fees that she incurred in pursuing her claim for unpaid overtime compensation and liquidated damages relating thereto. However, Wills is not entitled to be reimbursed for all of her attorney's fees because she was not successful on other claims and some of her claims do not allow for a recovery of attorney's fees. *See id*.

Upon examining the record before us, we note that Wills filed pleadings that specifically related both to her FLSA claim and the defense of Ramin's claims, as well as the prosecution of other counterclaims. Wills' unsegregated fees, time entries, as well as the testimony at trial, and the attorney's fee affidavit, provide at least some evidence which would support allowing a recovery of some of the fees.

*See Chapa*, 212 S.W.3d at 314 ("Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be."). We conclude that the trial court abused its discretion in failing to award some amount to Wills for attorney's fees, and the appropriate disposition of this case is to reverse that portion of the judgment stating that Wills should take nothing on her claim for attorney's fees and remand the attorney's fees issue to the trial court for further proceedings consistent with this opinion. *See Garcia v. Gomez*, 319 S.W.3d 638, 643 (Tex. 2010) (the trial court erred in failing to award a physician something for attorney's fees incurred in defense of a health care liability claim because under Tex. Civ. Prac. & Rem. Code § 74.351(b), the award of reasonable attorney's fees incurred by a physician who is not served timely with an expert report is required by statute and therefore the issue was remanded to the trial court); *see also Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012); *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007); *Schimmel v. McGregor*, 438 S.W.3d 847, 863 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Alphonso v. Deshotel*, 417 S.W.3d 194, 202 (Tex. App.—El Paso 2013, no pet.). Accordingly, we sustain Wills' issue on cross-appeal, and we reverse and remand to the trial court for further proceedings

pertaining to Wills' request for reasonable attorney's fees. We overrule all of Ramin's issues.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____
LEANNE JOHNSON
Justice

Submitted on April 9, 2015
Opinion Delivered October 15, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.